IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ROBERT F. HALLMAN, #2224866 | § | |
| | § | CIVIL ACTION NO. 6:20cv160 |
| VS. | | CONSOLIDATED WITH |
| | § | CIVIL ACITON 6:20cv183 |
| DIRECTOR, TDCJ, et al. | § | |

<u>REPORT AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE</u>

Plaintiff Robert F. Hallman, a prisoner currently confined at the Tarrant County Jail proceeding *pro se* and *in forma pauperis*, filed these civil-rights proceedings pursuant to 42 U.S.C. § 1983 complaining of an incident that occurred at the Beto Unit within the Texas Department of Criminal Justice (TDCJ). The cases were referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the proceedings.

Hallman is suing (1) Lorie Davis, former Director of TDCJ, (2) Officer Towobade, (3) the Wardens of the Beto Unit, (4) Captain Edwards, and (5) Grievance Officer at the Beto Unit. For the reasons explained below, the Court recommends that Plaintiff's lawsuit be dismissed without prejudice.

**I. Hallman's Amended Complaint**

Hallman's amended complaint, (Dkt. #32), is the operative pleading in this case. *See Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736 (5th Cir. 1986). He states that his lawsuit "centers on Officer Towabode assaulting [him] in the face with his mail and the other defendants violating [his] rights

1

by not following policies, rules, regulations, and statutory authority" in failing to properly document the incident. Hallman insists that the failure to document incidents is standard practice.

In his attached memorandum, Hallman elaborates on his claims. He states that on March 2, 2020, at the Beto Unit, O-Wing, Defendant Towabode "falsely accused [him] of stealing his own indigent supply envelope," (Dkt. #32, pg. 12). Hallman claims that "upon confronting [him], and while doing so in a tirade, Officer Towabode struck [him] repeatedly in the face with the ISE [indigent supply envelope] while yelling at [him]." *Id*. He states that this "mistreatment" and "assault" was wanton, malicious, sadistic, and dehumanizing.

With respect to Defendant Edwards, Hallman argues that Defendant Edwards violated his constitutional rights by failing to file "appropriate paperwork" so that the incident could be recorded and investigated. *Id*. He also asserts that all three Wardens of the Beto Unit have created and maintained an environment wherein it is permissible for prison guards to disregard the rights of prisoners, "which is why Officer Towabode didn't follow proper procedure when he suspected [he] committed a wrong, Towabode chose rather [to] assault [him]." *Id*. at pg. 13.

Hallman further asserts that the Grievance Officer failed to engage in a thorough and proper investigation into the incident, thereby "circumvent[ing] his right to redress and freedom of speech." *Id*. at pg. 14. Turning to Defendant Davis, Hallman maintains that she fails to properly train her prison staff, as a "culture clash has been the unforeseen or anticipated result [in] these African guards target African-American prisoners mistreating and harassing the African-American prisoners with contemptuous attitudes and treatment." *Id*. at pg. 14. By not training properly, Defendant Davis allows his rights to be violated because of the hostile environment and "heavy accent of the African officers," (Dkt. #20, pg. 2). Hallman seeks $50,000.00 in damages.

## II. Legal Standards

Under 28 U.S.C. § 1915A, a court shall review any complaint in a civil action wherein a prisoner seeks redress from a governmental entity or officer, or employee of a governmental entity. During its review, the court must identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1).

A complaint is frivolous if it lacks an arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). The Fifth Circuit has held that a complaint lacks an arguable basis in fact when "the facts alleged are fantastic or delusional scenarios or the legal theory upon which a complaint relies is indisputably meritless." *Id.* (quoting *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) (internal quotation marks omitted)). In other words, under section 1915A, a court may determine that a prisoner's complaint is frivolous if it rests upon delusional scenarios or baseless facts—and dismiss the complaint. *See Henry v. Kerr Cnty., Texas*, 2016 WL 2344231 *3 (W.D. Tex. May 2, 2016) ("A court may dismiss a claim as factually frivolous only if the facts alleged are clearly baseless, fanciful, fantastic, delusional, or otherwise rise to the level of the irrational or the wholly incredible, regardless of whether there are judicially noticeable facts available to contradict them.") (citing *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).

Moreover, a complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v, FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *See Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010); *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  This plausibility standard is **not** akin to a probability standard; rather, the plausibility standard requires *more than the mere possibility* that the defendant has acted unlawfully.  *Twombly*, 550 U.S. at 556 (emphasis supplied).

Although all well-pleaded facts are taken as true, the district court need not accept true conclusory allegations, unwarranted factual inferences, or legal conclusions.  *See Whatley v. Coffin*, 496 F. App'x 414 (5th Cir. Nov. 7, 2012) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).  Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id*.

**III. Discussion and Analysis**

The Court understands that Hallman raises claims concerning an alleged excessive use-of-force, the failure to adequately investigate grievances, the failure to follow policy, and discrimination.

<u>1. Failure to Exhaust</u>

As an initial matter, however, Hallman amended complaint suffers a fundamental flaw that precludes relief. A review of Hallman's amended complaint—and his own admission—shows that Hallman failed to exhaust his required administrative remedies prior to filing this lawsuit. It is well-settled that prisoners must exhaust any and all administrative remedies before proceeding in federal court.  *See Gonzalez v. Seal*, 702 F.3d 785, 787 (5th Cir. 2012) (explaining that pre-filing exhaustion is both mandatory and non-discretionary).  Congress enacted the Prison Litigation Reform Act ("PLRA") in 1996, which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

The exhaustion provision was unanimously upheld by the Supreme Court in *Booth v. Churner*, 532 U.S. 731 (2001). The Court subsequently held that exhaustion is mandatory, and that the requirement will not be excused when an inmate fails to properly exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Proper exhaustion means that an inmate must not only pursue all available avenues of relief but must also comply with all administrative deadlines and procedural rules. *Id.* at 90-91. The Fifth Circuit recently reiterated the principle that "[p]re-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez*, 702 F.3d at 788.

The Supreme Court elaborated further about the exhaustion requirement in *Jones v. Bock*, 549 U.S. 199 (2007). It was noted that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211. It was added, however, that the "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Id.* at 216.

Proper exhaustion is determined by reference to the applicable agency's grievance procedures. *Jones*, 549 U.S. at 217-18; *Patterson v. Stanley*, 547 F. App'x 510, 511 (5th Cir. 2013). TDCJ provides a two-step procedure for processing prisoner grievances. *See Johnson*, 385 F.3d at 515-16. A TDCJ prisoner, like Hallman, must properly complete both the Step One grievance and the Step Two appeal grievance in order to properly and fully exhaust his required administrative remedies. *See Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). In other words, a TDCJ prisoner, generally, must exhaust to completion—i.e., receiving a response to a Step One and a Step Two appeal—**before** filing a federal lawsuit.

The Court notes that TDCJ's exhaustion requirement is widely available to prisoners through the Offender Orientation Handbook. The Handbook, last updated in February 2017 and easily accessible on TDCJ's website, contains the grievance procedures. According to the

5

Handbook, the "Step 1 process may take up to 40 days from the date the unit grievance office receives the Step 1 form to respond or 45 days for medical grievance." Moreover, with respect to a Step 2 appeal grievance, TDCJ explains to prisoners that "[t]he Step 2 process may take up to 40 days to provide you a written response or 45 days for medical grievance."

Here, the docket reflects that Hallman filed this lawsuit—prior to the Northern District of Texas transferring it to this Court—on or about March 23, 2020, (Dkt. #1). The incident forming the basis for his lawsuit, the envelope incident with Defendant Towabode, occurred on March 2, 2020. He states that he filed his first grievance on March 3, 2020, and that "the institution has yet to respond to Plaintiff's Step 2, I-28 grievance form," (Dkt. #32, pg. 7). Hallman argues that this shows exhaustion.

It is plain on the face of Hallman's amended complaint—and initial complaint—that he failed to exhaust his required administrative remedies prior to filing this lawsuit. The Court is not persuaded that Hallman submitted a Step One grievance, received a response from prison officials, then filed a Step Two appeal, and subsequently received a response on the appeal—all within 21 days, particularly given how prison officials have up to 40 or 45 days in which to respond. *See, e.g.*, *Goldman v. Taylor*, 2021 WL 400510, at *3 (M.D. La. Jan. 2021) (finding that it was "clear on the face of Plaintiff's complaint that his claims are unexhausted," as he filed his complaint a "mere twelve days" after the complained-of incident).

Indeed, Hallman concedes this point by stating that prison officials have "not yet responded" to his Step Two grievance appeal, (Dkt. #32, pg. 7). Prisoners must exhaust their remedies to completion; in other words, Hallman did not wait for a response to his grievance before he filed this lawsuit—constituting the failure to exhaust. The Court notes that conclusory allegations that a prisoner filed grievances which were not answered or that the grievance process is inadequate are not sufficient to evade the exhaustion requirement. *See Kidd v. Livingston*, 463

6

F. App'x 311, 313 (5th Cir. 2012). Hallman has shown no valid basis upon which the exhaustion requirement may be excused, and his lawsuit should be dismissed.

### 2. Use of Force—*De Minimis*

Even if Hallman had not essentially conceded that he failed to exhaust his required administrative remedies, he nevertheless fails to state a claim upon which relief may be granted. As mentioned, Hallman maintains that Defendant Towabode "assaulted" and used excessive force upon him by striking him repeatedly in the face with a paper envelope—causing humiliation, shock, anxiety, and pain. He insists that Defendant Towabode's behavior was improper, as it was wanton, sadistic, and "antithetical to human dignity," (Dkt. #20). Hallman complains that Defendant Towabode yelled at him and wrongly assumed that he stole an envelope.

It is well-established that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment. *See Hudson v. McMillian*, 503 U.S. 1, 4 (1992). Because prison officials, when confronted with prison disturbances, have the difficult job of balancing the need to maintain and restore discipline, the core question in determining whether the force used against an inmate was applied in a good-faith effort to maintain or restore discipline inside the prison or, conversely, whether the force was applied maliciously and sadistically, for the very purpose of causing harm. *Id.* at 7; *see also Whitley v. Albers*, 475 U.S. 312, 320 (1986) ("But, in making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used.").

With those concerns at the forefront, the Supreme Court held that in determining whether a prison official acted maliciously or sadistically to cause an unnecessary and wanton infliction of pain, courts should consider: (1) the extent of the injury suffered; (2) the need for the application

7

of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7; *see also Baldwin v. Stadler*, 137 F.3d 836, 839 (5th Cir. 1998). Each factor is neither exclusive nor determinative, as each case must be judged on its own facts. *Baldwin*, 137 F.3d at 839.

42 U.S.C. § 1997(e), enacted as part of the Prison Litigation Reform Act (PLRA), provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody <u>without a prior showing of physical injury</u> . . ." (emphasis supplied); *see also Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997) (holding that a sore and bruised ear lasting for three days was *de minimis* and did not meet the physical injury requirement found in the PLRA). While section 1997(e) does not specifically define what constitutes or amounts to a "physical injury," both the United States Supreme Court and the Fifth Circuit Court of Appeals have provided guidance after the ruling in *Hudson*.

In *Wilkins v. Gaddy*, 559 U.S. 34 (2010), the Supreme Court reversed the Fourth Circuit's affirmance of a district court's *sua sponte* dismissal of a prisoner's complaint for excessive force based on *de minimis* injuries. There, the prisoner-plaintiff alleged that a guard "snatched [him] off the ground, slammed him to the concrete floor" and "then proceeded to punch, kick, knee, and choke Wilkins." *Wilkins*, 559 U.S. at 35. As a result of the force employed, Wilkins stated that he suffered a bruised heel, lower back pain, increased blood pressure, migraine headaches, dizziness, psychological trauma, and mental anguish. *Id*. As mentioned, the district court found those injuries *de minimis*, dismissed the case *sua sponte* for the failure to state a claim upon which relief can be granted, and the Fourth Circuit affirmed.

The Supreme Court found that the Fourth Circuit "strayed from the clear holding" of *Hudson*. *Id*. at 36. The Court found that the Fourth Circuit's holding amounted to, essentially, a requirement that the plaintiff demonstrate a significant injury in order to state a claim for excessive force—which ignores the "core judicial inquiry" of an excessive force analysis, which is whether the force was applied in a good-faith effort to restore discipline/order or maliciously and sadistically for the very purpose of causing harm. *Id*. at 36-37.

Importantly, however, the Supreme Court explained that "this is not to say that the absence of serious injury is irrelevant to the Eighth Amendment inquiry." *Id*. at 37. In other words, the absence of a serious injury is relevant to an excessive force inquiry under the Eighth Amendment. *See Edwards v. Stuart*, 37 F. App'x 90, 2002 WL 1022015 *2 (5th Cir. 2002) (unpublished) ("Nonetheless, *de minimis* uses of force are excluded from constitutional recognition.") (citing *Hudson*, 503 U.S. at 9). Moreover, the Fifth Circuit has held that, in order to be actionable, the amount of force must be more than *de minimis*—provided that the force is not repugnant to the conscience of mankind—and the plaintiff need not show serious injury, but the extent of the injury may supply insight as to the amount of force applied. *Cowart v. Erwin*, 837 F.3d 445, 453 (5th Cir. 2016).

Necessarily, then, "[a]n inmate who complains of a push or shove that causes no discernable injury almost certainly fails to state a valid excessive force claim." *Wilkins*, 559 U.S. at 38 (internal quotations and citations omitted); *see also Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993) (explaining that a prisoner need not show significant injury but must have suffered at least some injury); *Rankin v. Klevenhagen*, 5 F.3d 103, 108 (5th Cir. 1993) ("In cases post-*Hudson*, certainty some injury is still required.") (internal citations and quotations omitted).

Significantly, "[w]here there was no injury, the use of physical force is considered *de minimis* and therefore 'not repugnant to the conscience of mankind' so as to implicate the federal

9

constitution." *Jackson*, 984 F.2d at 700. The law in this circuit is clear: In order to state an Eighth Amendment claim, a prisoner must have "suffered at least some injury."  *Jackson*, 984 F.3d at 700; *see also Lee v. Wilson*, 237 F. App'x 965, 966 (5th Cir. 2007) (unpublished) (affirming the dismissal of a prisoner's excessive force claim, holding that the prisoner's split lip was a *de minimis* injury and the conduct was not repugnant to the conscience of mankind).

Here, to the extent that Hallman maintains that he was injured from the envelope from paper cuts, such injuries are *de minimis*. Hallman states that Defendant Towabode struck him with a paper envelope in his face causing humiliation, loss of dignity, and pain. But he does not elaborate whatsoever. For example, despite filing numerous complaints, Hallman does not state that he required medical care—other than a conclusory statement that care was "circumvented"—after the incident or even the severity of his pain or its location.

In other words, simply stating that the Defendant's action caused "pain," without more, does not state a discernable physical injury. *See, e.g.*, *Bradshaw v. Unknown Lieutenant*, 48 F. App'x 106 (5th Cir. 2002) (unpublished) (affirming district court's dismissal as frivolous an excessive force claim wherein prisoner complained of "burning eyes, and skin for approximately 24 hours, twitching of his eyes, blurred vision, irritations of his nose and throat, blistering of his skin, rapid heartbeat, mental anguish, shock and fear as a result of the use of mace," finding that the prisoner "has not shown that he suffered more than a de minimis injury."). Hallman has alleged nothing more than a *de minimis* injury. *See Hudson*, 503 U.S. at 9 (holding that not "every malevolent touch by a prison guard gives rise to a federal cause of action."); *Ledlow v. Givens*, 500 F. App'x 910, 912-12 (11th Cir.) (slap received by a prisoner after being restrained did not rise to an Eighth Amendment violation even though he had a bloody nose and small facial laceration), *cert. denied*, 569 U.S. 1033 (2013); *Hill v. Vannata*, 123 F. App'x 723, 724 (7th Cir. 2005) (a claim for a slap that caused redness and swelling was dismissed a de minimis pursuant to

section 1915A and affirmed on appeal); *Hibbert v. Harris*, 2016 WL 4059148, at *9 (N.D. Fla. 2016) (unpublished) (several slaps to the head that did not result in injury did not rise to the level of a constitutional violation). Hallman's claim of excessive force should be dismissed.

In a more recent unpublished case, the Fifth Circuit Court of Appeals reversed and remanded a district court's frivolous determination about a prisoner's claim of excessive force that resulted in "only a bruise." *See McGuffey v. Blackwell*, 784 F. App'x 240, 243 (5th Cir. 2019) (unpublished). Reminding readers that not every malevolent touch by a prison guard gives rise to a federal cause of action, the Fifth Circuit determined that McGuffey's pleading—wherein he stated that he suffered a bruise to his arm stemming from a prison guard's jab—was not frivolous because force, rather than injury, ultimately counts. *Id.*; *contra Siglar*, 112 F.3d at 193-94 (published) (holding that a sore and bruised ear lasting for three days was *de minimis* and did not meet the physical injury requirement found in the PLRA).

Here, unlike *McGuffey*, Hallman does not identify a specific injury; rather, he simply states that he suffered "pain" and anxiety. In these ways, even if he had exhausted his administrative remedies to completion, Hallman has not identified a discernable physical injury that is more than *de minimis* and the claim should be dismissed. *See Richardson v. Simmons*, 2009 WL 689888, at *9 (S.D. Tex. Mar. 11, 2009) ("As another court in this circuit has observed, a 'physical injury' in in this context 'is an observable or diagnosable medical condition requiring treatment by a medical care professional.'") (quoting *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997)).

Hallman repeatedly claims that Defendant Towabode violated his constitutional rights through his attitude—by yelling and accusing him of wrongdoing. Through this incident with the paper envelope, Hallman maintains that Defendant Towabode disrespected his dignity. But rude, disrespectful, or even insensitive behavior does not constitute a constitutional violation. *See Hollyfield v. Hurst*, 796 F. App'x 817, 820 (5th Cir. 2019) (unpublished) ("Rude or insensitive

behavior towards prisoners is disgraceful conduct, but it does not alone rise to the level of deliberate indifference."); *Atkins v. Lofton*, 373 F. App'x 472, 474 n.1 (5th Cir. 2010) (unpublished) ("We do not suggest that we condone any rude or insensitive treatment Atkins may have received. However, rudeness or lack of compassion alone are insufficient to support a cause of action against these parties."). Similarly, mere threatening language and comments do not rise to the level of a constitutional violation. *See McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983). Hallman's complaints concerning alleged yelling, tirades, and dehumanizing nature fail to state a claim upon which relief may be granted and should be dismissed.

### 3. Prison Grievances

Hallman further maintains that Defendants, Grievance Officer and Captain Edwards specifically, violated his constitutional rights by failing to file appropriate/proper paperwork after the envelope incident and failed to investigate his grievances properly.

These allegations also fail to state claims upon which relief may be granted. It is well-settled that prisoners do not have a constitutional right to have their prison grievances resolved to their satisfaction. *Geiger v. Jones*, 404 F.3d 371, 374 (5th Cir. 2005) ("Geiger does not have a federally protected liberty interest in having these grievances resolved to his satisfaction."); *see also Alexander v. TDCJ*, 951 F.3d 236, 240 (5th Cir. 2020) ("Third, the district court did not abuse its discretion in dismissing Alexander's claim that his grievances were mishandled or improperly denied, as prisoners have no due process rights in the inmate grievance process."); *Hill v. Walker*, 718 F. App'x 243, 250 (5th Cir. 2018) (unpublished) ("Prisoners do not have a federally protected liberty interest in having these grievances resolved to [their] satisfaction, and an alleged § 1983 due process violation for failure to investigate grievances is indisputably meritless.") (internal citation and quotations omitted). Accordingly, Hallman's claims—the failure to properly


document/investigate the envelope incident and his prison grievances—are therefore frivolous and should be dismissed.

### 4. Failure to Follow Policy

Hallman next argues that Defendants fail to follow their own prison policies, thereby fostering an environment of mistreatment and neglect. He, however, does not identify a specific policy that was not followed that resulted in a constitutional violation. The purported failure of TDCJ officials to follow their own regulations, policies, and procedures is not sufficient to state a civil rights claim—if constitutional minima are nevertheless met. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) ("Our case law is clear, however, that a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met."); *see also Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) ("The claim is that the mere failure of the TDC official to follow their own regulations was a constitutional violation. There is no such controlling constitutional principle.").

Here, Hallman has neither identified a <u>specific</u> policy nor a constitutional violation that occurred as a result of such policy. Instead, he proffers conclusory allegations that Defendants fail to follow TDCJ policy concerning reporting incidents—which is a regular practice. As explained, however, Hallman's pleadings about the envelope incident do not reveal a constitutional violation because he alleged no discernable physical injury. Defendants' alleged failure to follow an unidentified policy or regulation, coupled with the lack of a physical injury, fails to state a claim.

### 5. Discrimination

Finally, Hallman argues that Defendants discriminate against him. He describes a "culture clash" and states that "these African guards target African-American prisoners" and that TDCJ failed to offer specialized training.

In order to establish a violation of the Equal Protection Clause, the plaintiff "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from discriminatory intent." *See Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001); *see also Gallegos-Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012) ("To establish an equal protection claim, Gallegos must show that two or more classifications of similarly situated persons were treated differently.").

A plaintiff alleging disparate treatment must identify a discriminatory purpose, as that "implies that the decision-maker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *See Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995). Crucially, a plaintiff must allege specific facts supporting a claim of discrimination—as opposed to his or her personal belief that discrimination occurred. *Id*.

Here, Hallman fails to state an equal protection claim upon which relief can be granted. Hallman has not articulated or identified a discriminatory purpose or motive—as he merely states conclusory allegations that TDCJ has hired prison staff without "proper" training, resulting in a culture clash. Hallman fails to identify or plead a discriminatory motive or intent—and, instead, remarks that TDCJ hiring practices have resulted in unintended consequences. But the Court is not required to entertain the unadorned "the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Hallman's claims of discrimination should be dismissed.

**IV. Conclusion**

Hallman's civil rights lawsuit should be dismissed without prejudice. It is evident from the plain face of Hallman's amended complaints—and his own admission—that he failed to exhaust his required administrative remedies to completion before filing this lawsuit. Even if he had

exhausted, nonetheless, his amended allegations fail to state claims upon which relief may be granted and should therefore be dismissed.

## RECOMMENDATION

Accordingly, it is recommended Plaintiff Hallman's civil rights lawsuit be dismissed, without prejudice, for the failure to exhaust administrative remedies.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So ORDERED and SIGNED this 19th day of September, 2022.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE